UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| SOANE MONESTIME and WOLD MONESTIME, Individually and as Parents and Next Friends of O.G.M.<br>    Plaintiffs.<br><br>V.<br><br>MEGAN S. CONNELLY, M.D., and UNITED STATES OF AMERICA<br>    Defendants. | CIVIL ACTION NO. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

This is an action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 2671 et. seq., on behalf of the Plaintiffs, SOANE MONESTIME and WOLD MONESTIME, individually and as parents and next friends of O.G.M., by and through their undersigned attorneys, Thomas and Wickenheiser, LLC, for personal injuries arising out of the negligent acts and omissions of employees of the United States of America within the meaning of the FTCA.

## PARTIES

1. Plaintiff, Soane Monestime, is an adult individual who resides in Foxboro, Norfolk County, Massachusetts and is the mother of Minor Plaintiff, O.G.M.

2. Plaintiff, Wold Monestime, is an adult individual who resides in Foxboro, Norfolk County, Massachusetts, and is the father of Minor Plaintiff, O.G.M.

3. Plaintiff, O.G.M., is a minor who resides in Foxboro, Norfolk County, Massachusetts, and whose action is brought by and through her parents and next friends, Soane Monestime and Wold Monestime.

4. Defendant, The United States of America, is the employer of certain nurse practitioners and medical professionals who provided medical treatment to Minor Plaintiff in their capacity as employees of Mattapan Community Health Center, a federally supported health center, within the meaning of 42 U.S.C. § 233(g).

5. Defendant, Megan S. Connelly, M.D. ("Defendant Connelly") was at all times relevant to this Complaint, a physician licensed to practice medicine in the Commonwealth of Massachusetts,

1

with a usual place of business at Brigham and Women's Hospital, 75 Francis Street, Boston, Suffolk County, Massachusetts. Defendant Connelly provided medical care and treatment to Plaintiff from approximately February 13, 2019 through February 15, 2019.

## JUSIDICTION & VENUE

6. Jurisdiction is based on 28 U.S.C. § 1346 (b) and venue is appropriate under 28 U.S.C. § 1402, in that Plaintiffs reside in this district and the acts and omissions giving rise to this action occurred in this district.

7. Jurisdiction over the defendant, Megan Connelly, M.D., is based on 28 USC § 1367, supplemental jurisdiction.

8. The Plaintiffs have presented this claim to the appropriate federal agency, the Department of Health and Human Services, which denied the administrative tort claims of Wold and Soane Monestime, individually, and on Behalf of their Minor Daughter, O.G.M., and Plaintiffs are filing pursuant to 28 U.S.C. § 2401(b).

9. The Plaintiffs sought treatment at Mattapan Community Health Center, a federally funded medical care provider. The claim arises out of the negligent acts and omissions of employees at Mattapan Community Health Center, including, but not limited to, Laverne Dickson, N.P.

10. This action is brought to recover monetary damages for the severe and permanent physical personal injuries suffered by Minor Plaintiff and her parents individually as a direct result of the negligence of nurse practitioner employed at a deemed community health center and a physician in Massachusetts.

## FACTS

11. On February 13, 2019 O.G.M. was born at Brigham and Women's Hospital ("BWH") via spontaneous vaginal delivery. She was 38.2 weeks gestation at delivery and had Apgar Scores of 9 and 9 at 1 and 5 minutes of life, respectively. O.G.M. weighed 5 pounds, 13 ounces at birth (2660g). O.G.M. was noted to be small for gestational age (SGA). The pregnancy was significant for intrauterine growth restriction (IUGR) at 32 weeks and a maternal history of G6PD carrier with her first child diagnosed with G6PD deficiency.

12. A call was placed to "Heather" at the outpatient pediatrician's office, Mattapan Community Health Center, notifying the office of O.G.M.'s birth. There is no indication of what was discussed during this call. O.G.M.'s immediate post-natal course was complicated by hypoglycemia requiring glucose gel x1 with prompt improvement in blood glucose level.

13. On February 14, 2019, a 24-hour transcutaneous bilirubin level was obtained. The resulted yielded a value of 7.9 mg/dl. A lactation consultation was performed and noted O.G.M. was both breast and bottle feeding. O.G.M.'s mother was using a nipple shield to assist with breast feeding. After several minutes of nonnutritive sucking, O.G.M. was removed from the breast and offered formula.

14. On February 15, 2019 at 34 hours of life, nursing reported that O.G.M. had an elevated transcutaneous bilirubin level (11.1) and planned for a serum bilirubin level to be drawn during the Phenylketonuria (PKU) test. Jaundice was observed to be chest level at this time. Later that morning a serum direct bilirubin level resulted value of 0.3, however the lab noted to interpret with caution as the result may be falsely low due to hemolysis. The total bilirubin level resulted as 8.0 and was flagged to be high per lab criteria (again with concern of accuracy due to hemolysis). O.G.M. was discharged to home by Megan S. Connelly, MD with a scheduled follow up appointment for 2/19/19 at Mattapan Community Health Center.

15. On the morning of discharge (February 15, 2019) at 9:38AM, an after-visit summary was generated by BWH for the primary care pediatrician. Dr. Connelly's discharge documentation regarding O.G.M.'s skin assessment was in conflict with the nursing assessment of her skin throughout her hospitalization. Dr. Connelly noted that O.G.M.'s skin was pink with no jaundice, however, nursing documentation (throughout her hospitalization) noted increasing jaundice to the level of the chest on discharge. Dr. Connelly's skin assessment, and not the nursing documentation, was pulled into the after-visit summary thereby giving no indication to the primary care physician's office of O.G.M.'s accurate jaundice level at discharge.

16. The nurse practitioner employee of Mattapan Community Health Center who evaluated and treated Minor Plaintiff, O.G.M., were required to do so in accordance with the standard of care of the average qualified nurse practitioner rendering care and treatment for Minor Plaintiff's symptoms and conditions.

17. On Saturday February 16, 2019, O.G.M.'s parents brought her to Mattapan Community Health Center with concerns regarding jaundice. Nurse Practitioner, Laverne Dickson examined baby O.G.M. O.G.M. was noted to be formula fed and producing 3-4 diapers a day. Nurse Dickson noted O.G.M. was sleeping during the physical examination. Nurse Dickson observed jaundice to the level of O.G.M.'s chest and abdomen. This was a progression of the chest level jaundice found on O.G.M. upon discharge from BWH the day prior. Nurse Dickson noted that O.G.M. should produce 6-8 diapers a day and encouraged feeding every 2-3 hours for treating jaundice. No bilirubin level was obtained at this office visit nor was O.G.M. sent to the hospital for bilirubin testing. The plan was for O.G.M. to return to clinic in approximately two days for follow up.

18. On February 19, 2019, O.G.M. presented to the clinic at 8:30AM (her scheduled appointment was for 1:00PM however her parents presented early with concerns). O.G.M. was seen by a different Nurse Practitioner. O.G.M.'s mother was noted to be very concerned that O.G.M. was yellow. She reported increased sleeping and poor feeding. O.G.M. was noted to be lethargic, sleeping through the majority of the physical examination (similarly to NP Dickson's findings). O.G.M. was also observed to have a subconjunctival hemorrhage of the left eye. O.G.M. was found to have severe jaundice from head to legs. O.G.M. was noted to be down 1 ounce in weight since Saturday's appointment. O.G.M. was referred to Boston Children's Hospital Emergency Department (BCH ED).

19. O.G.M. arrived to BCH ED where her mother reported skin color changes combined with lethargy and poor feeding. She reported feeding approximately 1 ounce every 6 hours due to decreased energy levels. She reported 4 wet diapers in the last 24 hours. O.G.M.'s mother

reported that she's a carrier and her son has G6PD. O.G.M.'s skin was jaundiced and there was scleral jaundice in her eyes. Serum labs were drawn and sent revealing a total bilirubin level of 37.6 with a direct bilirubin of 6.9. Repeat labs were drawn to confirm accuracy and resulted a total value of 28.8 with direct bilirubin of 6.5. A urine sample was positive for bilirubin and urobilirubin.

20. A stat assist was called at 11AM when O.G.M. was found to be hypothermic to 35.2C with hypoxemia and bradypnea. Blow by oxygen was administered and O.G.M. was placed in a warmer. She was transferred to the Neonatal Intensive Care Unit (NICU) for continued treatment of her hyperbilirubinemia.

21. In the NICU, O.G.M. was noted to have desaturation episodes related to periodic breathing. She was placed on CPAP and eventually weaned to nasal cannula. The apnea/periodic breathing was found to be secondary to seizure activity. O.G.M. was loaded on phenobarbital and fosphenytoin and her periodic breathing resolved. IV fluids and maximal phototherapy was started immediately to treat O.G.M.'s severe hyperbilirubinemia. While preparations were being made for a double volume exchange transfusion, her bilirubin level began to rapidly decrease in response to the triple phototherapy and rehydration.

22. While in the NICU, hematology consulted after a confirmed diagnosis of G6PD deficiency was made for O.G.M. After review of the clinical picture without hemolysis, G6PD deficiency was determined to not be the likely etiology of O.G.M.'s severe hyperbilirubinemia. The severe hyperbilirubinemia was determined to likely be secondary to breast milk jaundice exacerbated by dehydration.

23. On February 23, 2019, a brain MRI was performed. The findings were consistent with kernicterus, noting T1 shortening in the globus pallidi, subthalamic nuclei and tail of the hippocami bilaterally.

24. It was noted that O.G.M. passed her hearing screen at birth, however, a repeat hearing screen on February 25, 2019 revealed a concern for hearing loss given the risk of hearing impairment with bilirubin toxicity.

25. On March 8, 2019, O.G.M. was discharged to home on Oxcarbazepine and phenobarbital to control seizure activity. To date, O.G.M. continues to be followed outpatient by neurology and is enrolled in early intervention. O.G.M. is being monitored by audiology for auditory neuropathy spectrum disorder in the setting of kernicterus.

26. As a result of untreated severe hyperbilirubinemia, Plaintiff O.G.M. suffered severe brain damage (i.e. kernicterus).

27. As a result of untreated severe hyperbilirubinemia, Plaintiffs endured significant pain and suffering.

**SOANE MONESTIME, WOLD MONESTME, as PARENTS of O.G.M. v. MEGAN S. CONNELLY, M.D.**

## COUNT I

28. Plaintiffs repeat and incorporate the foregoing paragraphs as if each were set forth in its entirety.

29. Starting on or about February 13, 2019 and thereafter, Defendant rendered treatment to Minor Plaintiff and therefore owed her a duty of due care in accordance with accepted standards of medical care and treatment.

30. At all times material hereto, Defendant breached her duty to Plaintiffs by providing care and treatment in a negligent, careless, improper and/or unskillful manner as follows:

    a. failing to follow the standard of care and skill of the average qualified member of the profession practicing the medical specialties practiced by Defendant, taking into account advances in the profession;

    b. failing to properly administer or to have administered medications, procedures, or therapies as indicated for the treatment and care of Minor Plaintiff;

    c. failing to promptly and/or properly diagnose and treat the conditions and medical problems of Minor Plaintiff, and her subsequent complications;

    d. failing to use diligence in the care and treatment of Minor Plaintiff, and any subsequent complications;

    e. failing to timely provide and/or request and/or order the appropriate medical intervention for Minor Plaintiff; and

    f. failing to recognize and appreciate Minor Plaintiff's jaundice level to the chest; failing to accurately assess and document the jaundice finding; failing to ensure the after-visit summary and related records were clinically correct before transmission to the pediatrician's office; failing to order or ensure that a timely follow-up appointment with Minor Plaintiff's pediatrician was scheduled; and failing to ensure that the pediatrician's office was aware of the concerns related to Plaintiff's increasing jaundice and her risk for hyperbilirubinemia.

31. Defendant breached her duty when she negligently and carelessly treated Minor Plaintiff in a manner which resulted in Plaintiff's severe and permanent injuries and damages.

32. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by Defendant as set forth above, Minor Plaintiff has required extensive medical care and will require medical care in the future.

33. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by Defendant as set forth above, Minor Plaintiff lost and will continue in the future to lose the ability to engage in substantial gainful employment/activity.

34. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by Defendant as set forth above, Plaintiff has incurred great sums in medical expenses and will continue to incur medical expenses in the future.

35. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by Defendant as set forth above, Plaintiff has suffered and continues to suffer great physical pain and mental anguish and has permanently lost the ability to engage in her usual activities.

36. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by Defendant as set forth above, Plaintiff has lost the ability to live a normal and happy life.

**WHEREFORE,** Plaintiffs demand judgment against Defendant for the above-described permanent injuries, loss of chance of cure, and damages including, but not limited to, pain and suffering, loss of Plaintiff's reasonably expected net income, medical and hospital expenses, and loss of earning capacity, including interest and costs.

### SOANE MONESTIME and WOLD MONESTME V.  MEGAN S. CONNELLY, M.D

### COUNT II

37. Plaintiffs repeat and incorporate the foregoing paragraphs as if each were set forth in its entirety.

38. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment of Minor Plaintiff by Defendant as set forth above, Plaintiffs have suffered the loss of Minor Plaintiff's services, society, affection, and companionship.

**WHEREFORE,** Plaintiffs demand judgment against Defendant for loss of their parental society, including interest and costs.

### SOANE MONESTIME, WOLD MONESTME, as PARENTS of O.G.M.  v. UNITED STATES OF AMERICA

### COUNT III NEGLIGENCE

39. Plaintiffs repeat and incorporate the foregoing paragraphs as if each were set forth in its entirety.

40. Starting on or about February 16, 2019 and thereafter, Laverne Dickson rendered treatment to Plaintiff and therefore owed her a duty of due care in accordance with accepted standards of medical care and treatment.

41. At all times material hereto, Laverne Dickson breached her duty to Plaintiffs by providing care and treatment in a negligent, careless, improper and/or unskillful manner as follows:

    a. failing to follow the standard of care and skill of the average qualified member of the profession practicing the medical specialties practiced by Laverne Dickson, taking into account advances in the profession;

6

    b. failing to properly administer or to have administered medications, procedures, or therapies as indicated for the treatment and care of Plaintiff;

    c. failing to promptly and/or properly diagnose and treat the conditions and medical problems of Plaintiff, and her subsequent complications;

    d. failing to use diligence in the care and treatment of Plaintiff, and any subsequent complications;

    e. failing to timely provide and/or request and/or order the appropriate medical intervention for Plaintiff; and

    f. failing to recognize and appreciate the presence of jaundice to Plaintiff's abdomen as both progression of the jaundice at discharge the day prior and evidence of severe jaundice; failing to recognize Plaintiff's lethargy, evidenced by her sleeping through the physical examination, as a symptom of severe jaundice' failing to act on the noted recognition of Plaintiff's significant decreased output of 3-4 diapers a day as evidence of dehydration and a serious risk factor for hyperbilirubinemia; failing to recognize Plaintiff's risk for G6PD deficiency and the possibility of resulting hemolysis increasing her risk for severe hyperbilirubinemia; failing to order the STAT serum bilirubin level; and failing to order and/or refer Plaintiff to the emergency department for further testing, evaluation and treatment.

42. Laverne Dickson breached her duty when she negligently and carelessly treated Plaintiff in a manner which resulted in Plaintiff's severe and permanent injuries and damages.

43. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by Laverne Dickson as set forth above, Plaintiff has required extensive medical care and will require medical care in the future.

44. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by Laverne Dickson as set forth above, Plaintiff lost and will continue in the future to lose the ability to engage in substantial gainful employment/activity.

45. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by Laverne Dickson as set forth above, Plaintiff has incurred great sums in medical expenses and will continue to incur medical expenses in the future.

46. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by Laverne Dickson as set forth above, Plaintiff has suffered and continues to suffer great physical pain and mental anguish and has permanently lost the ability to engage in her usual activities.

47. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by Laverne Dickson as set forth above, Plaintiff has lost the ability to live a normal and happy life.

**WHEREFORE,** Plaintiff demands judgment against Defendant for the above-described permanent injuries, loss of chance of cure, and damages including, but not limited to, pain and suffering, loss of Plaintiff's reasonably expected net income, medical and hospital expenses, and loss of earning capacity, including interest and costs.

### SOANE MONESTIME and WOLD MONESTME V. UNITED STATES OF AMERICA

### COUNT IV

48. Plaintiffs repeat and incorporate the foregoing paragraphs as if each were set forth in its entirety.

49. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment of Minor Plaintiff by Defendant as set forth above, Plaintiffs have suffered the loss of Minor Plaintiff's services, society, affection, and companionship.

**WHEREFORE,** Plaintiffs demand judgment against Defendant for loss of their parental society, including interest and costs.

### SOANE MONESTIME, WOLD MONESTME, as PARENTS of O.G.M. v. UNITED STATES OF AMERICA

### COUNT V

50. Plaintiffs repeat and incorporate the foregoing paragraphs as if each were set forth here in its entirety.

51. At all times relevant hereto, Mattapan Community Health Center by and through its agents, servants and/or employees, rendered care and treatment to Plaintiff beginning on approximately February 16, 2019.

52. At all times relevant hereto, Mattapan Community Health Center by and through its agents, servants and/or employees, owed a duty of reasonable care to Plaintiff.

53. At all times relevant hereto, Mattapan Community Health Center by and through its agents, servants and/or employees, breached its duty to Plaintiff providing care and treatment in a negligent, careless, improper and/or unskillful manner as follows:

    a. failing to follow the standard of care and skill of the average qualified member of the profession practicing the medical specialties practiced by the agents, servants and/or employees of Mattapan Community Health Center taking into account advances in the profession;

    b. failing to properly administer or to have administered medications, procedures, or therapies as indicated for the treatment and care of Plaintiff;

    c. failing to promptly and/or properly diagnose and treat the conditions and medical problems of Plaintiff, and her subsequent complications;

   d. failing to use diligence in the care and treatment of Plaintiff, and any subsequent complications;

   e. failing to timely provide and/or request and/or order the appropriate medical intervention for Plaintiff; and

   f. failing to recognize and appreciate the presence of jaundice to Plaintiff's abdomen as both progression of the jaundice at discharge the day prior and evidence of sever jaundice; failing to recognize Plaintiff's lethargy, evidenced by her sleeping through the physical examination, as a symptom of severe jaundice' failing to act on the noted recognition of Plaintiff's significant decreased output of 3-4 diapers a day as evidence of dehydration and a serious risk factor for hyperbilirubinemia; failing to recognize Plaintiff's risk for G6PD deficiency and the possibility of resulting hemolysis increasing her risk for severe hyperbilirubinemia; failing to order the STAT serum bilirubin level; and failing to order and/or refer Plaintiff to the emergency department for further testing, evaluation and treatment.

54. Mattapan Community Health Center, by and through its agents, servants and/or employees, breached its duty when it negligently and carelessly treated Plaintiff in a manner which resulted in Plaintiff's severe and permanent injuries and damages.

55. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by Mattapan Community Health Center, by and through its agents, servants and/or employees, as set forth above, Plaintiff has required extensive medical care and will require medical care in the future.

56. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by Mattapan Community Health Center, by and through its agents, servants and/or employees, as set forth above, Plaintiff lost and will continue in the future to lose the ability to engage in substantial gainful employment/activity.

57. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by Mattapan Community Health Center, by and through its agents, servants and/or employees, as set forth above, Plaintiff has incurred great sums in medical expenses and will continue to incur medical expenses in the future.

58. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by Mattapan Community Health Center, by and through its agents, servants and/or employees, as set forth above, Plaintiff has suffered and continues to suffer great physical pain and mental anguish and has permanently lost the ability to engage in her usual activities.

59. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by Mattapan Community Health Center, ,by and through its agents, servants and/or employees, as set forth above, Plaintiff has lost the ability to live a normal and happy life.

   **WHEREFORE,** Plaintiff demands judgment against Defendant for the above-described permanent injuries, loss of chance of cure, and damages including, but not limited to, pain and

suffering, loss of Plaintiff's reasonably expected net income, medical and hospital expenses, and loss of earning capacity, including interest and costs.

## SOANE MONESTIME and WOLD MONESTME V. UNITED STATES OF AMERICA

## COUNT VI

60. Plaintiffs repeat and incorporate the foregoing paragraphs as if each were set forth in its entirety.

61. As a direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment of Minor Plaintiff by Mattapan Community Health Center, by and through its agents, servants and/or employees, as set forth above, Plaintiffs have suffered the loss of Minor Plaintiff's services, society, affection, and companionship.

**WHEREFORE,** Plaintiffs demand judgment against Defendant for loss of their parental society, including interest and costs.

Respectfully Submitted,

Plaintiff,
By their Attorney,

/s/ Kathryn J. Wickenheiser
Kathryn J. Wickenheiser, Esq.
BBO No. 675040
THOMAS & WICKENHEISER, LLC
1R Newbury Street, Suite 303B
Peabody, MA 01960
774-302-2300
kathryn@thomaswicklaw.com