UNITES STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  | CIVIL ACTION NO. |
|---|---|---|
| SOANE MONESTIME and WOLD MONESTIME, | ) | 1:21-CV-10403-IT |
| Individually and as Parents and Next Friends of O.G.M., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MEGAN S. CONNELLY, M.D., and | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON APPLICABILITY OF M.G.L. ch. 231 §85K**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... i

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

STATUTORY BACKGROUND ............................................................................................ 3

    A.    Notwithstanding Charitable Immunity or Statutes Limiting the Liability of Charities, Massachusetts Has Always Permitted Malpractice Victims To Recover In Full from Negligent Doctors ...................................................................................................................... 3

    B.    When Congress Waived Sovereign Immunity Through the FTCA, It Did not Intend to Deprive Patients of Compensation Rights Under State Law ...................................... 4

    C.    Congress Did not Intend to Deprive Patients of Compensation Rights Under State Law When It Made the FTCA the Exclusive Remedy for Torts Committed by Doctors Affiliated with Federally Qualified Health Centers .............................................................. 6

ARGUMENT ................................................................................................................... 8

I.    The United States' Position is Inconsistent with the Text of the Relevant Statute, 28 U.S.C. § 2674 ......................................................................................................................... 9

    A.    The Plain Words of § 2674 Unambiguously Establish That the United States Is Liable To The Same Extent As the Natural Person Who Committed The Tort ................................. 10

    B.    The Third Paragraph Of § 2674 Also Establishes That the United States Stands In The Shoes Of The Individual Tortfeasor ............................................................................ 13

II.    More Than 75 Years of FTCA Practice in Massachusetts Belies the Argument Advanced by the United States ......................................................................................................... 14

III.    The United States (And the Authorities It Relies Upon) Misinterprets The FTCA Because It Fails To Confront The Actual Language Employed By Congress .......................................... 16

    A.    The Westfall Act Did Not Extinguish the Liability Of Federal Employees, But Transferred That Liability To The United States .................................................................. 16

    B.    The FTCA's Waiver of Sovereign Immunity is Not Construed Narrowly ............…….....19

    C.    The Authorities Cited By The United States Fail To Come To Grips With The Actual Language Of §2674…………………………………………………………………………19

IV.    Depriving the Plaintiffs of the Compensation Rights They Would Otherwise Have Under Massachusetts law Does Not Advance the Purpose of the FTCA Waiver of Sovereign Immunity or the FSHCAA ........................................................................................................... 21

CONCLUSION ............................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Borosavage v. United States*, 667 F. Supp.2d 208 (D. Mass. 2009) ...............................................13

*Bradford v. Union Bank of Tennessee*, 54 U.S. 57 (1851).................................................. 17

*Bryant v. United States*, 126 F. Supp. 2d 1227 (D. Ariz 2000)........................................21

*Chesley v. Durant*, 243 Mass. 180 (1922)................................................................ 3

*Colby v. Carney Hosp.*, 356 Mass. 527 (1969) ........................................................ 3

*Dalehite v. United States*, 346 U.S. 15 (1953)........................................................ 5

*Doe v. Roman Catholic Bishop of Springfield*, 490 Mass. 373 (2022) ........................ 3

*Dolan v. U.S. Postal Service*, 546 U.S. 481 (2006) ........................................... 6, 19, 20

*Dupont v. United States*, 197 F. Supp. 3d 678 (D.N.J. 2016) ...................................21

*FDIC v. Meyer*, 510 U.S. 471 (1994)………………………………………………………………...9

*Feres v. United States,* 340 U.S. 135 (1950)........................................................ 4, 5

*Haceesa v. United States*, 309 F.3d 722 (10th Cir. 2002)..........................................20

*Indian Towing Co. v. United States*, 350 U.S. 61 (1955)........................................ 5

*Jacques v. United States*, No. 13-CV-10520-DJC (filed March 76, 2013)....................... 18

*Jesner v. Arab Bank, PLC*, 584 U.S. 241, 138 S.Ct. 1386 (2018) ...............................10

*Keene v. Brigham & Women's Hosp., Inc.,* 439 Mass. 223 (2003) ........................... 3

*Knowles v. United States*, 91 F.3d 1147 (8th Cir. 1996)........................... 12, 13, 16, 20

*Levin v. United States*, 568 U.S. 503 (2013)........................................................ 7, 10

*Lomando v. United States*, 667 F.3d 363 (3d Cir. 2011) ...........................................20

*McDonald v. Massachusetts Gen. Hosp.,* 120 Mass. 432 (1876) ............................... 3

*Mohamad v. Palestinian Authority*, 566 U.S. 449 (2012) ........................................ 11

*Mullins v. Pine Manor Coll.*, 389 Mass. 47 (1983)................................................ 4

*Nasuti v. Scanell*, 906 F.2d 802 (1st Cir. 1990) ................................................... 7

*Pomeroy v. United States*, 2018 WL 1093501 (D. Mass., February 27, 2018)............... 8

*Poyser v. United States*, 602 F. Supp. 436 (D. Mass. 1984) .....................................13

*Preston v. United States*, 2022 WL 3093235 (D. Mass., May 25, 2022).....................13

*Ramnarain v. Grossman*, 2020 WL 5751528 (D. Mass., Sept 25, 2020) ..................... 8

*Reilly v. United States*, 863 F.2d 149 (1st Cir. 1988)...............................................21

*Rodriguez-Miranda v. Benin*, 829 F.3d 29 (1st Cir. 2016) ...................................... 18

*Starns v. United States*, 923 F.2d 34 (4th Cir. 1991) ..............................................21

*Tessier v. United States*, 164 F. Supp. 779 (D. Mass. 1958) (Aldrich, J.) .................. 3, 15

*United States v. Grigalauskas*, 195 F.2d 494 (1st Cir. 1952) .................................. 15

*United States v. Kosak*, 465 U.S. 848 (1984).................................................... 6, 19

*United States v. Nordic Village Inc.*, 503 U.S. 30 (1992) ........................................ 6

*United States v. Wong*, 575 U.S. 402 (2015) ....................................................... 5

*United States v. Yellow Cab Co.*, 340 U.S. 543 (1951)............................................6

**Statutes**

1 U.S.C. § 1..............................................................................................11

28 U.S.C. § 1346 ............................................................................. passim

28 U.S.C. § 2674 ............................................................................. passim

28 U.S.C. § 2679 ......................................................................... 7, 17

28 U.S.C. § 2680……………………………………………………………...5, 6, 19
28 U.S.C. § 931(a)........................................................................................ 6, 14
28 U.S.C. §2679 ................................................................................................ 1
42 U.S.C. § 233(g) ....................................................................................... 1, 8
M.G.L. ch. 231 §85K ............................................................................. 3, 4, 14

**Other Authorities**
*Black's Law Dictionary* (11ᵗʰ ed. 2019) ...................................................... 17
**Rules**
Fed. R. Civ. P. 25(c)...................................................................................... 17

## INTRODUCTION

This action arises from the failure of Laverne Dickson, a Massachusetts nurse practitioner, who worked at a federally qualified health center, to order bilirubin testing for O.G.M., or send her to the hospital for bilirubin testing, despite a progression from the chest level jaundice observed the day before, with decreased feedings and diaper changes. As a result of Nurse Practitioner Dickson's clear breach of the standard of care, O.G.M. developed kernicterus. Plaintiffs Soane Monestime and Wold Monestime, O.G.M.'s parents (the "Plaintiffs") brought this Federal Tort Claim Action because the FTCA is the exclusive avenue for survivors to obtain compensation for harm caused by a nurse practitioner with a federally qualified health center. *See* 42 U.S.C. § 233(g); 28 U.S.C. §2679(b)(1).

The United States seeks to limit Plaintiffs' rights to compensation by applying a liability cap that only applies to charitable non-governmental entities. Massachusetts law has always permitted injured plaintiffs to recover full compensation from physicians whose negligence caused their injuries. In more than 75 years of FTCA jurisprudence neither the doctrine of charitable immunity nor statutes limiting the liability of non-profit entities has ever limited the liability of a Massachusetts medical provider for whom the United States was responsible. Indeed, 66 years ago this Court rejected the argument the United States makes in this case: that notwithstanding the United States' waiver of sovereign immunity, charitable immunity limits the United States' liability for a negligent government medical professional. *Tessier v. United States*, 164 F. Supp. 779 (D. Mass. 1958) (Aldrich, J.) *aff'd* 269 F.2d 305 (1st Cir. 1959).

1

As demonstrated below, Congress never intended to reduce the compensation that malpractice victims would receive under state law when the United States is substituted for a negligent medical professional in FTCA actions.  The motion for partial summary judgment must be denied.

## FACTUAL BACKGROUND

At all relevant times Nurse Practitioner Dickson was employed by Mattapan Community Health Center, a federally qualified health center.  ("MCHC") Complaint, ¶¶ 4, 9.  Nurse Practitioner Dickson, in the course of her employment at MCHC, examined and provided medical care to O.G.M. on February 16, 2019.  Complaint, ¶¶ 12, 17, 26.  N.P. Dickson noted O.G.M.'s jaundice level extended to her chest and abdomen, and that she slept through the examination. However, she failed to obtain O.G.M.'s bilirubin level at this office visit, or send her to the hospital for bilirubin testing.  Complaint, ¶ 18.  This led to O.G.M. developing severe hyperbilirubinemia and brain damage (kernicterus).  Complaint, ¶¶ 22 - 27.

**STATUTORY BACKGROUND**

A.    Notwithstanding Charitable Immunity or Statutes Limiting the Liability of
Charities, Massachusetts has Always Permitted Malpractice Victims to Recover
in Full from Negligent Medical Professionals

For almost 100 years, patients who were injured by the negligence of physicians or other

professionals affiliated with a Massachusetts non-profit hospital had no right of action against

the hospital. *McDonald v. Massachusetts Gen. Hosp.,* 120 Mass. 432, 436 (1876).

Massachusetts common law recognized charitable immunity on the ground that non-profit

institutions operated on funds donated for charitable purposes and it would be improper to divert

those funds to satisfy liabilities caused by the institutions' negligent agents. *Keene v. Brigham &*

*Women's Hosp., Inc.,* 439 Mass. 223, 238, n. 25 (2003). *See generally Doe v. Roman Catholic*

*Bishop of Springfield*, 490 Mass. 373, 383-84 (2022) (discussing precedents). But even when charitable

immunity was a complete bar to recovery from the hospital, an injured patient could obtain complete

compensation for their injuries from the health care professionals who caused the injury. *See e.g. Chesley*

*v. Durant,* 243 Mass. 180, 182-83 (1922) (surgeon who negligently failed to drain a hospital patient's

surgical wounds liable for patient's injuries). *See also, McDonald*, 120 Mass at 434, 436 (recognizing that

plaintiff had rights against the surgeon and "house pupil" who improperly set a fractured bone).

Over time it was recognized that it was appropriate for hospitals to compensate patients

injured by their employees' negligence and most states abolished charitable immunity through

legislation or court decision. *Colby v. Carney Hosp.,* 356 Mass. 527, 528 (1969). After the SJC

announced its intention to do likewise if the Massachusetts legislature took no action, *id.,* the

General Court passed St.1971, c. 785 which, as codified by M.G.L. ch. 231 §85K abolished

charitable entities' immunity from tort suits, but limited the liability of "a corporation, trustees

of a trust, or members of an association" which was "a charity," if "the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation, trust, or association."  In 2012, the Legislature amended § 85K to its current form, raising the cap to $100,000 "in the context of medical malpractice claims against a nonprofit organization providing health care."  St.2012, c. 224, §222.

Section 85K makes no reference to a charity's agents or even its direct employees.  In *Mullins v. Pine Manor Coll.*, 389 Mass. 47, 63-64 (1983) the SJC, finding that the Massachusetts Legislature deliberately decided to "narrowly confine the doctrine of charitable immunity," confirmed that the agents or employees of a non-profit entity are not within the statute's scope.  The Legislature, it ruled, left in place the general rule that "that an agent is not entitled to the protection of his principal's immunity even if the agent is acting on behalf of his principal."

The question raised by the United States' motion is whether Congress intended to extinguish those rights when it waived the defense of sovereign immunity by the passage of the FTCA. Given the remedial purpose of the FTCA and the sweeping waiver Congress provided to assist innocent victims harmed by the negligence of federal employees, the answer must be "No."

      B.    When Congress Waived Sovereign Immunity Through the FTCA, It Did not Intend to Deprive Patients of Compensation Rights Under State Law

Arising out of the English law principle that the sovereign could never be sued, sovereign immunity from tort liability is a distinct doctrine from charitable immunity.  *Feres v. United States,* 340 U.S. 135, 139 (1950) (recognizing the consequences of sovereign immunity are "unjust").  Congress passed the FTCA in 1946 "to waive the Government's immunity from

actions for injuries to person and property occasioned by the tortious conduct of its agents acting within their scope of business." *Dalehite v. United States*, 346 U.S. 15, 27-28 (1953).  The "broad and just" purpose of the act was "to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable." *Indian Towing Co. v. United States*, 350 U.S. 61, 68 (1955).  The Supreme Court has instructed that a court interpreting the scope of the waiver enacted by the FTCA should not "as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it."  *Id.* at 69.

Three sections of the FTCA are particularly relevant to the United States' motion.  The United States principally relies upon 28 U.S.C. § 1346(b) which confers exclusive jurisdiction on the District Courts, "subject to the provisions of Chapter 171 of this title" to hear claims against the United States based on the "negligent or wrongful act or omission of any employee of the Government."

This statute, however, merely confers jurisdiction, *United States v. Wong*, 575 U.S. 402, 412 (2015).  *See also Feres*, 340 U.S. at 140-41 (recognizing that § 1346(b) only confers jurisdiction; once jurisdiction has been conferred, Court must examine other sections of FTCA to determine whether a plaintiff's claim is cognizable).  The provisions that define the precise contours of the sovereign immunity waiver are set forth in Chapter 171 of Title 28, 28 U.S.C. §§ 2671 through 2680.  28 U.S.C. § 2674 is the provision that defines the United States' liability in light of the waiver.  In relevant part it provides: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent *as a private individual* under the like circumstances. . ." (emphasis added).  This provision waives the

sovereign immunity defense in "sweeping language." *United States v. Yellow Cab Co.*, 340 U.S. 543, 547-48 (1951) (reviewing earlier version of the statute, 28 U.S.C. § 931(a)).

28 U.S.C. § 2680 sets out thirteen enumerated exceptions to the waiver enacted by § 2674. To avoid defeating the central purpose of the FTCA—which is to compensate victims of negligent governmental actors—the Supreme Court has made clear that the exceptions to the FTCA should be construed narrowly. *Dolan v. U.S. Postal Service*, 546 U.S. 481, 482 (2006) ("unduly generous interpretations" of the exceptions to the FTCA "run the risk of defeating the central purpose of the statute," *quoting United States v. Kosak*, 465 U.S. 848, 853, n.9 (1984)); *United States v. Nordic Village Inc.*, 503 U.S. 30, 34 (1992) (in the context of the sweeping language of the FTCA, consistent with Congress' clear intent, exceptions to the FTCA waiver of sovereign immunity are narrowly construed).[1]  Significantly, neither charitable immunity nor the protection of assets of entities that engage in charitable activities are identified as exceptions in the FTCA.  28 U.S.C. § 2680.

Thus, there is no statutory basis to find that when Congress waived sovereign immunity through the enactment of the FTCA, it intended to eliminate a patient's right under state law to be compensated in full for the damages caused by a negligent physician for whom the United States was responsible.

       C.      Congress Did not Intend to Deprive Patients of Compensation Rights Under State Law When It Made the FTCA the Exclusive Remedy for Torts Committed by Doctors Affiliated with Federally Qualified Health Centers.

---

[1]  In the Memo, at 7, n. 7, the United States cites *Nordic Village* in support of its contention that the FTCA's sovereign immunity waiver should be construed narrowly.  The statute at issue in *Nordic Village*, however, was not part of the FTCA, but a provision of the Bankruptcy Code.  The opinion's discussion of the FTCA stated that it is *the exceptions* to the FTCA's waiver of sovereign immunity that should be construed narrowly to insure consistency with Congressional intent, not the FTCA waiver itself.  503 U.S. at 34.

Prior to 1988, plaintiffs injured by a government employee not only had the ability to seek compensation from the United States, but also the option to bring suit against the government employee who engaged in the tortious conduct; governmental employees were not immune merely because they committed a tort within the scope of their official duties. *See Levin v. United States*, 568 U.S. 503, 507-08 (2013). In 1988, Congress passed the Federal Employees Liability Reform and Tort Compensation Act of 1988 (also known as the "Westfall Act"), 28 U.S.C. § 2679, which (subject to exceptions not relevant here) made proceedings under the FTCA the exclusive remedy for any injury or death resulting from the negligent action or omission of any government employee "while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1).

Under the Westfall Act, if an action was brought against a government employee and the Attorney General determined that the named defendant was acting within the scope of his office or employment, the lawsuit would be deemed an action against the United States "and the United States shall be substituted as the party defendant." § 2679(d)(1). Thereafter, the resulting claim against the United States proceeded under the FTCA "subject to the same limitations and exceptions applicable to those actions." § 2679(d)(4). Congress expressly stated that the purpose of the Act was to protect federal employees from personal liability for common law torts "while providing persons injured by the common law torts of Federal employees with an appropriate remedy against the United States." *Nasuti v. Scanell*, 906 F.2d 802, 804 (1st Cir. 1990), *quoting* PL 100-694, November 18, 1988, 102 Stat. 4563, § 2(b). Reducing the compensation available to tort victims was not the Act's purpose. *Id.*

The scope of wrongful conduct covered by the FTCA was expanded again by Congress through the Federally Supported Health Centers Assistance Acts of 1992 and 1994

("FSHCAA"), codified at 42 U.S.C. § 233(g). In these acts, Congress deemed federally qualified health centers (such as MCHC) and their employees, officers and licensed medical contractors to be employees of the U.S. Public Health Service. 42 U.S.C. § 233(g)(1)(A). Thus, for any tort claim premised upon the negligence of persons affiliated with a federally qualified health center, the FTCA is the exclusive remedy for such misconduct and, consistent with the Westfall Act, the United States is substituted as the defendant in any action in which the employees, officers or medical contractors of a health center are alleged to be negligent. *See Ramnarain v. Grossman*, 2020 WL 5751528 at *1, n.2 (D. Mass., Sept 25, 2020).

The purpose of the FSHCAA, as this Court has recognized, is to enable health centers in underserved and underfunded communities to obtain malpractice coverage through the FTCA that will compensate the centers' patients harmed by negligent medical treatment. *See Pomeroy v. United States*, 2018 WL 1093501 at *2 (D. Mass., February 27, 2018). The centers' need to have their patients protected from harm caused by malpractice is not an abstract consideration. Thus, while the FSHCAA (like the Westfall Act) protected medical professionals from personal liability, it also (like the Westfall Act) protected patients and was not intended to reduce those patients' state law rights to receive compensation for tortious injuries (except to the extent Congress set forth explicit exceptions to the FTCA remedy in 28 U.S.C. §2860).

## ARGUMENT

There is no dispute that Plaintiffs allege their injuries were caused by the negligence of Nurse Practitioner Dickson, and that Nurse Practitioner Dickson does not qualify for the Massachusetts liability cap for charitable entities. There is no dispute that Nurse Practitioner Dickson treated O.G.M. within the scope of her duties at Mattapan Community Health Center, a federally qualified health center. There is also no dispute that because Nurse Practitioner

Dickson worked at such a center, the Plaintiffs' exclusive remedy is a suit against the United States under the FTCA.  The only dispute is whether the United States is only responsible for the liability of Mattapan Community Health Center—whose liability would be capped under Massachusetts law, or whether it stands in the shoes of the uncapped private individual whose conduct was tortious.

The words of the statute leave no doubt—the United States is liable "in the same manner and to the same extent as a private individual under like circumstances."  The structure of the FTCA, and the words of the Westfall Act confirm that the United States is fully responsible for the actions of any federal "employee" who negligently performs within the scope of her duties.  This is how the United States has interpreted its obligation to Massachusetts patients under the FTCA for more than 75 years.  Additionally, Plaintiffs' reading of the statutes furthers the policies of the FSHCAA, which is intended to provide quality healthcare to the most underserved and undertreated Americans.  That goal can only be fulfilled if those who have the least capability to endure the consequences of medical mistreatment have the ability of obtaining full compensation when they are injured by the negligence of a government doctor.

## I.     THE UNITED STATES' POSITION IS INCONSISTENT WITH THE TEXT OF THE RELEVANT STATUTE, 28 U.S.C. § 2674.

The extent of the United States' liability to the Plaintiffs on account of Nurse Practitioner

---

[2] The United States directs the Court to 28 U.S.C. §1346(b)(1).  But unlike § 2674, § 1346(b)(1) is merely a jurisdictional grant; it does not define the extent of the United States' liability once jurisdiction has been established.  Section 1346(b)(1), which expressly states that it is subject to Chapter 171 of Title 28 (the substantive provisions of the FTCA, 28 U.S.C. §§ 2670 – 2680), establishes six elements that an FTCA plaintiff must allege for the federal courts to have jurisdiction over the controversy.  *FDIC v. Meyer*, 510 U.S. 471, 477 (1994).  The United States does not dispute the Court's jurisdiction over this action.  Nor could it; all six jurisdictional elements are present.

Plaintiffs have brought a claim against the United States (first element) for money damages (second element) due to personal injuries or a death (third element) caused by the negligent omission of a deemed employee of the United States (fourth element) while acting in the scope of her duty (fifth element).  As to the sixth element, even the extent of the damages the Plaintiffs may recover is disputed, the United States, if a private person, would have some liability to the Plaintiffs in accordance with the law where the negligent actions occurred, Massachusetts.

be liable…in the same manner and *to the same extent as a private individual under like circumstances*" (emphasis added).  The United States interprets this statute to mean that the private actor whose liability defines the extent of federal liability should be "a private employer or corporation." Memo at 7-8. Such an interpretation is incompatible with the text enacted by Congress.

A.    The Plain Words of § 2674 Unambiguously Establish That the United States Is Liable To The Same Extent As the Natural Person Who Committed The Tort

In determining the meaning of a statute, Courts "look first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. at 513 (quotation omitted). Although the United States argues that it should only be liable to the extent a private employer or corporation would be, Congress did not use the word "employer" in the statute. Indeed, the language it chose does not even suggest the comparator should be any kind of entity or non-natural person. Congress deliberately compared the government's liability to the liability of a "private individual," a term which signifies that Congress intended to reference a natural person; a human. This makes sense, since Congress was dealing with the liability caused by government employees who engaged in negligent conduct. The actual tortfeasors in these cases are natural persons—i.e. private individuals--not employers or corporations.

The Supreme Court has not interpreted the word "individual" in § 2674, but it has interpreted that term when Congress employed it in other federal statutes. It has ruled that when Congress refers to the liability of "individuals," it "unambiguously" refers to the "liability [of] natural persons." *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 138 S.Ct. 1386, 1404 (2018).

In *Mohamad v. Palestinian Authority*, 566 U.S. 449, 453-56 (2012), the Supreme Court was required to determine whether the Torture Victim Protection Act of 1991, which imposed liability on "an individual" who engaged in torture, could be employed against persons who were not

natural persons, such as corporations or state entities. That statute, like the FTCA, did not define

the term "individual." The Court first looked to the word's "ordinary meaning." *Id.* at 454. It

referenced several dictionaries which defined the term "individual" as "a human being," "a person"

and a "particular person". *Id.* It then looked at how the term was used in everyday parlance,

recognizing that in ordinary usage the word "individual" is referring "unmistakably" to a "natural

person." *Id.* And the Court commented "no one, we hazard to guess, refers in normal parlance, to

an organization as an 'individual.'" *Id.* Reviewing its own usage of the term, the Court recognized

that it too "routinely uses 'individual' to denote a natural person, and in particular to distinguish

between a natural person and a corporation." *Id.* From this uniform evidence of the term's ordinary

meaning, the Court concluded:

> Congress does not, in the ordinary course, employ the word any differently. The
> Dictionary Act instructs that "[i]n determining the meaning of any Act of
> Congress, unless the context indicates otherwise ... the wor[d] 'person' ...
> include[s] corporations, companies, associations, firms, partnerships, societies,
> and joint stock companies, as well as individuals." 1 U.S.C. § 1 (emphasis added).
> With the phrase "as well as," the definition marks "individual" as distinct from
> the list of artificial entities that precedes it. In a like manner, federal statutes
> routinely distinguish between an "individual" and an organizational entity of
> some kind.

*Id.* at 454-55. *Muhamad*'s definition of "individual" equally applies to this statute.

*Muhamad* recognized that Congress is free to give the word "individual" a broader

meaning than "natural person," but cautioned that "before we will assume it has done so, there

must be *some* indication Congress intended such a result." *Id.* at 455 (emphasis in original). It

will be a "rare statute" that includes such an indication. *Id.* One compelling factor that evidenced

Congress' intent that "individual" be given its customary meaning in the statute at issue in

*Mohamad* was that in other places in the same statute Congress employed the broader term

"person," which ordinarily encompasses natural persons as well as nonnatural entities. *Id.* at

456.  The Court noted that it should defer to Congress' decision to use different terms. *Id.*

This same distinction is present in the FTCA.  In the FTCA's jurisdictional grant, 28U.S.C. §1346(b)(1), enacted as part of the same legislation that enacted § 2674, Congress conditioned jurisdiction on a showing that circumstances existed where "the United States, *if a private person*, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." (emphasis added).  Yet Congress used a narrower term, "private individual," when it identified the extent of the United States' liability once jurisdiction was established in § 2674. Congress' decision to use a different term to define the extent of liability must be recognized as intentional.

Only one case from the Courts of Appeals examines the language of § 2674 in the context of a state liability cap that covered employing entities but did not extend to the individual tortfeasors, *Knowles v. United States*, 91 F.3d 1147, 1150 (8th Cir. 1996).  *Knowles* fully supports the Plaintiffs' position.  There, the Eighth Circuit, after reviewing the language of § 2674 and the Westfall Act's requirement that an action under the FTCA is a plaintiff's exclusive remedy for negligence by government employees, found the effect of the provision to be "quite clear:"

> [T]he United States stands in the shoes of the medical services specialists. It has, through the FTCA and the Westfall and Gonzalez Acts, removed liability from its employees and placed it on itself.  It is liable to the same extent the employee would have been absent immunity from suit. If an employee would not have had the benefit of a particular defense, a damages cap for example, neither does the United States.

91 F.3d at 1150.[3]

The text of the statute leads to only one conclusion: the extent of the United States' liability is defined by the potential liability of the natural person who committed the tortious act, not the natural person's employer. *Muhamad* and *Knowles* compel that result. Here, the individual tortfeasor, Nurse Practitioner Dickson, is not covered by the Massachusetts charitable organization damage cap. Consequently, Plaintiffs' potential recovery from the United States is not capped.

B.    The Third Paragraph Of § 2674 Also Establishes That the United States Stands In The Shoes Of The Individual Tortfeasor.

Other language in § 2674 confirms that the United States' liability is equivalent to the liability of the individual tortfeasor. The third paragraph of § 2674 provides:

> With respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.

Thus, when Massachusetts law provides immunity or a liability cap to individual physicians accused of negligence, the United States can assert those defenses. The FTCA, however, does not authorize the Unites States to raise anyone else's personal defenses, such as defenses held by a hypothetical private entity that employed the tortfeasor. Had Congress intended the United States to assert defenses available to a private employer in comparable circumstances, such a provision would have also been included in § 2764. Instead, where the statute permits United States to stand in an employee's shoes to assert personal state law defenses, it is implicit that the United States remains in the employee's shoes when the same state's law makes the employee fully liable for tortious conduct.

---

[3] The United States contends that *Knowles* was incorrectly decided. Plaintiffs discuss why that critique of *Knowles* is unfounded (and why the authorities cited by the United States are inapposite) in Section III. *infra*.

## II.     MORE THAN 75 YEARS OF FTCA PRACTICE IN MASSACHUSETTS BELIES THE ARGUMENT ADVANCED BY THE UNITED STATES

The statute that defined the contours of the United States' waiver of sovereign immunity and the extent of the United States' liability resulting from that waiver was originally enacted in 1946.[4]  The United States points to no amendment or other development which would have changed the interpretation of the relevant statutory language over the decades.  Thus, if the United States' current interpretation of § 1346(b)(1) and § 2674 are correct, subsequent to the enactment of M.G.L. ch. 231 § 85K in 1971, all FTCA malpractice actions caused by government doctors who practiced in Massachusetts should have been capped at $20,000 (or $100,000, after the cap was raised in 2012) because the United States could only be liable to the extent of a hypothetical non-profit hospital that employed the doctor.  And prior to 1971, when charitable immunity was a complete bar to an action against a non-profit hospital, such claims should have been dismissed because the comparable private employer was immune.

Yet, clearly, this was not the case.  Relatively shortly after the passage of § 2674, Judge Bailey Aldrich, before he was elevated to the First Circuit, rejected the argument that an FTCA action premised on the malpractice of a doctor employed by a Veteran's Administration ("VA")

---

[4] The original version of the FTCA, enacted by 60 Stat. 843 and originally codified at 28 U.S.C. § 931(a) contained both the jurisdictional grant now found in 28 U.S.C. 1346(b)(1) and the waiver of sovereign immunity now set forth in the current § 2674. The relevant language in these two statutes is virtually unchanged from the original version. The relevant portion of 28 U.S.C. § 931(a) read:

> Subject to the provisions of this chapter, the United States district court . . . shall have exclusive jurisdiction to hear, determine, and render judgment on any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred.  Subject to  the provisions of this chapter, the United States shall be liable in respect of such claims, to the same claimants, in the same manner, and to the same extent, as a private individual under like circumstances, except that the United States shall not be liable for interest prior to judgment, or for punitive damages:

Title 28 was reorganized in 1948 with the FTCA's jurisdictional provision moved to § 1346(b) and the substantive provisions moved to Chapter 171 of Title 28.

hospital should be dismissed because a suit against a private hospital would be barred by charitable immunity. *Tessier v. United States*, 164 F. Supp. at 779.  Noting the broad waiver of sovereign immunity enacted by Congress, the Court found "[i]t would be illogical to read back into the statute an immunity which has been granted to local charities, presumably for the pragmatic purpose of extending the charitable dollar to the greatest good of the greatest number, comparable in many respects to ordinary governmental immunity." *Id.* at 779. Judge Aldrich also found support for his position in the fact that the First Circuit, in *United States v. Grigalauskas*, 195 F.2d 494 (1ˢᵗ Cir. 1952), had affirmed a $94,000 FTCA judgment that arose from the negligent conduct of an army physician who treated a premature newborn shortly after birth. *Tessier*, 164 F. Supp at 779.[5]

Similarly, on numerous occasions after the enactment of § 85K, the U.S. Attorney for the District of Massachusetts has defended (and occasionally lost) FTCA medical malpractice cases where the plaintiffs sought more than the amount of the statutory cap. *See, e.g. Poyser v. United States*, 602 F. Supp. 436, 437-440 (D. Mass. 1984) ($500,000 awarded under FTCA for a 1979 death caused by negligence of army physician employed at an Army hospital at Fort Devens); *Borosavage v. United States*, 667 F. Supp.2d 208, 210-15 (D. Mass. 2009) ($150,000 awarded under FTCA for 2005 death caused by negligence of physician employed at West Roxbury Veteran's Association Medical Center); *Preston v. United States*, 2022 WL 3093235 at *7 (D. Mass., May 25, 2022) ($1,250,000 awarded under the FTCA for death caused by negligence of physician employed at the Bedford VA).

---

[5] As Judge Aldrich acknowledges, *Grigalauskas* did not discuss charitable immunity, but whether the doctrine barred medical malpractice cases where physicians were employed at government hospitals had been raised (and not decided) in a FTCA case the First Circuit had decided months earlier, *Porto Rico Gas & Coke Co. v. Frank Rullan & Associates*, 189 F.2d 397, 401-02 (1ˢᵗ Cir. 1951).  Two of the judges on the *Porto Rico Gas* panel had sat on the *Grigaluaukas* panel, the authors of both opinions.  In these circumstances, Judge Aldrich concluded the First Circuit "necessarily" decided the charitable immunity issue and had rejected the defense. *Tessier,* 164 F. Supp at 779.

The United States is not formally estopped by the positions it has taken in other litigation, but this consistent, continuous history—particularly in the early years of the statute when this argument would have afforded the United States a complete defense against liability--evidences the recognition that the FTCA's waiver of sovereign immunity was not intended to put the victims of government malpractice in a significantly worse position than other Massachusetts residents who were treated by a private doctor.

III. **THE UNITED STATES (AND THE AUTHORITIES IT RELIES UPON) MISINTERPRETS THE FTCA BECAUSE IT FAILS TO CONFRONT THE ACTUAL LANGUAGE EMPLOYED BY CONGRESS**

The United States contends the Plaintiff's interpretation of the FTCA's "private individual" liability standard is incorrect for three reasons. First, it claims the U.S. cannot stand in the shoes of the employee because the employee is immune by operation of the Westfall Act and the FSHCAA. Second, because the FTCA requires the employee to have committed the tort within the scope of their employment, in accordance with state law principles of *respondeat superior*, Congress must have intended the U.S. to be liable only to the extent the employer is liable under state law. And third, according to the United States, the FTCA's waiver of sovereign immunity must be strictly construed. *Memo* at 4, 7 n. 7. None of these grounds prevent the Court from applying the statute in accordance with the language Congress actually selected.

A. The Westfall Act Did Not Extinguish the Liability Of Federal Employees, But Transferred That Liability To The United States

The United States argues the court should decline to follow the reasoning in *Knowles,* as the Government cannot stand in the shoes of the individual employee because the individual employee, through the mechanics of the FTCA, is immune from suit. *Memo* at 7, n. 7. The government employees have had immunity from suit since 1988 when the Westfall Act was

passed. But, as described in Section I.A above, whose shoes the United States stands in is determined by § 2674 and whom Congress intended to be the "private individual" referenced in that statute. That statutory language was enacted in 1946. S*ee* fn. 4 *supra*. Plainly, an immunity granted in 1988 cannot shed light on who Congress intended to be the "private individual" when it passed the first version of the FTCA four decades earlier.[6]

Moreover, the language Congress employed in the Westfall Act supports Plaintiffs' interpretation of the FTCA. When Congress determined that an FTCA action against the United States should be the exclusive remedy for wrongful conduct by government employees acting within the scope of their employment, it commanded that in any litigation "the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1).

The consequences of the mandatory substitution are not set out in the Westfall Act or elsewhere in the FTCA, but the effect of a substitution on parties' rights and obligations is well defined in the common law. A "substitution" is "a designation of a person or thing to take the place of another person or thing." *Black's Law Dictionary* (11th ed. 2019). In the context of an obligation or liability owed by an original party, a substitution replaces the original obligor and makes the new party liable for the first party's obligation. The Supreme Court's federal common law jurisprudence shows this type of situation was well understood. *See*, *e.g. Bradford v. Union Bank of Tennessee*, 54 U.S. 57, 68 (1851) (when complainant was substituted for original party, complainant replaced original party and succeeded to that party's rights and obligations under the contract). In modern practice, under Fed. R. Civ. P. 25(c), courts substitute a new defendant

---

[6] Moreover, the argument leads to absurd results. Recall that the third paragraph of § 2674 permits the government to assert any defense the individual tortfeasors could have raised. If the Westfall Act wholly extinguished the government tortfeasor's liability, the United States would be able to assert this defense in every case where liability was premised on the negligence of a government employee. This would eliminate virtually all liability under the FTCA since almost all FTCA cases arise from the wrongful acts of individual government employees.

for the originally named defendant when the new party has succeeded to the obligation owed by the original party. *See,* e.g., *Rodriguez-Miranda v. Benin,* 829 F.3d 29, 40-41 (1st Cir. 2016) (substitution occurred because the new party succeeded to the original defendant's obligation).

Defendant substitution does not occur under Rule 25 (or the FTCA) because the plaintiff has a different theory of liability against the new party; it occurs because the substituted party has legal responsibility for the original party's liability. That is precisely what this Court did when it substituted the United States for two government employees who were originally named as defendants in *Jacques v. United States*, No. 13-CV-10520-DJC at ECF 24.

In *Jacques,* a case involving an inappropriate sexual relationship between a patient and a primary care physician at a federally qualified health center, the patient sued the United States, the primary care physician, two supervisory health center employees, and the health center. The patient's complaint had multiple counts, including separate counts alleging direct negligence by each of the supervisory employees and separate counts against the United States and the health center based on those entities' vicarious liability for the supervisory employees' negligence. *See Jacques v. United States*, No. 13-CV-10520-DJC at ECF 1. The United States acknowledged the supervisory employees' conduct occurred within the scope of their employment and this Court substituted the United States for the two supervisory employees. *See* Order, *Jacques v. United States*, No. 13-CV-10520-DJC (filed March 76, 2013) at ECF 24.

The Court however did not dismiss the counts in the complaint relating to the direct negligence of the supervisory employees. *Id.* If the FSHCAA and the Westfall Act extinguished the liability of supervisory employees, the counts alleging direct negligence should have been tossed— there was no longer any actionable direct negligence claims. Moreover, vicarious liability counts against the United States and the health center had already been pled. But even after the United

States was substituted for the supervisory employees, potential direct liability for the supervisory employees remained.  And the United States, by substituting itself for the supervisory employees, assumed the extent of that liability.

The same is true here.  Although there was never a formal substitution motion, the Plaintiffs' complaint clearly alleges that the United States is liable for Dickson's negligence as the successor to her liabilities.  Complaint, ECF 1, at ¶¶ 4, 9, 16-17.

B.      The FTCA's Waiver of Sovereign Immunity is Not Construed Narrowly

The United States also asserts that the FTCA's waiver of sovereign immunity must be strictly construed in favor of the sovereign.  *See, e.g.* Memo at 4.  The Supreme Court has rejected this contention on multiple occasions, specifically holding that the principle is "unhelpful" in the FTCA context because "unduly generous interpretations" in favor of the United States "run the risk of defeating the central purpose of the statute." *See, e.g. Dolan,* 546 U.S. at 491-92; *Kosak,* 465 U.S. at 853, n. 9.  *See also*, *Wong,* 575 U.S. at 419-20 ("in stressing the Government's equivalence to a private party, the FTCA goes further than the typical statute waiving sovereign immunity" observing Court's consistent refusal to cabin the FTCA's waiver of immunity in contrast to other waivers of immunity.)

To determine whether conduct that otherwise meets the jurisdictional requirements of §1346(b)(1) is outside of the FTCA's waiver of sovereign immunity, this Court must identify whether the circumstances fall within the words and the reason of one of the exceptions to the

FTCA set forth in 28 U.S.C. § 2680, no more and no less.  *Dolan*, 546 U.S. at 492.  Here, of course, none of the 13 enumerated exceptions to the FTCA are at issue, which is another reason why the United States' attempt to defeat the remedial purposes of the FTCA should be rejected.

19

C.     The Authorities Cited By The United States Fail To Come To Grips With The
       Actual Language Of § 2674

The United States relies heavily on *Haceesa v. United States*, 309 F.3d 722, 728-30 (10th

Cir. 2002) and the District Court decisions which follow it.[8]  In *Haceesa* the Tenth Circuit

declined to follow *Knowles* and instead enforced a medical malpractice liability cap that did not

extend to some of the individual government employees but would have protected a comparable

private employer.  It did so because it found § 1346(b) is "unmistakably" couched in the

language of an employer's *respondeat superior* liability.  Similarly, it found the United States to

more closely resemble a private employer than an individual employee.  *Id.* at 728.

In criticizing *Knowles*, *Haceesa* contends that the Eighth Circuit "failed to come to grips

with the language of § 1346(b)." *Id.* at 729.  However, it is the Tenth Circuit that failed to come

to grips with the relevant statutory language.  It failed to recognize the differences between the

purpose of § 1346(b) and § 2674, failed to recognize that the language of § 2674 controls the

"extent" of FTCA, failed to deal with the statutory language that defines the extent of FTCA

liability to be equivalent to that incurred by a "private individual," and failed to recognize that

the "private individual" referenced in § 2674 must be a natural person.  Decided in 2002, before

the Supreme Court's decisions in *Dolan* and *Wong*, *Hacessa*'s view of how the FTCA should be

---

[8] The United States also cites the Third Circuit's decision in *Lomando v. United States*, 667 F.3d 363, 373-74 (3d Cir. 2011) which examines the *respondeat superior* principles embedded in §1346(b) and expressed the opinion that the United States stands in the shoes of a private employer for liability purposes.  Like *Haceesa*, however, the Third Circuit failed to examine the differences in the language employed in §§ 1346(b)(1) and 2674.  Moreover, this portion of the Third Circuit's opinion is dicta.  All of the individual government employees were covered by the relevant New Jersey liability cap and the Court decided the case based upon the Government's ability to raise these employees' personal defenses pursuant to the third paragraph of § 2674.  *Id.* at 375-79.

interpreted is also fatally compromised by its incorrect insistence that the FTCA's statutory waiver of sovereign immunity must be strictly construed. *Id*. at 728, 729. Unsurprisingly, the District Court opinions[9] cited by the United States suffer from the same errors.[10]

## IV.   DEPRIVING THE PLAINTIFFS OF THE COMPENSATION RIGHTS THEY WOULD OTHERWISE HAVE UNDER MASSACHUSETTS LAW DOES NOT ADVANCE THE PURPOSE OF THE FTCA WAIVER OF SOVEREIGN IMMUNITY OR THE FSHCAA

The United States argues that giving the United States the benefit of a liability cap that could never be invoked if the Plaintiffs could have sued Nurse Practitioner Dickson in state court furthers the goals of the FSHCAA and furthers the provision of quality health care to under-served communities. Nothing could be further from the truth.

Under the FSHCAA, the provision of health care to the most needy was not supposed to impose additional tort burdens. Instead, the objective was to spare federally qualified health centers the cost of malpractice premiums (which would allow them to devote more resources to health care), but without abrogating the tort compensation rights of the centers' patients in the event of medical malpractice. This was a solution that truly provided protection and quality care to persons most likely to need (or fall through) society's safety nets. The United States' position upends that bargain. Employing a liability cap where none would exist in the private sector does not provide a single additional dollar to MCHC or any other federally qualified health center.

---

[9] *See Bryant v. United States*, 126 F. Supp. 2d 1227, 1234-35 (D. Ariz 2000) (failing to distinguish between § 1386(b) and § 2674, and failing to recognize that the "private individual" under § 2674 must be a natural person.); *Dupont v. United States*, 197 F. Supp. 3d 678 (D.N.J. 2016) (erroneously construing the FCTA waiver strictly; erroneously applying the *Lomando* dicta (*see*, fn. 6 *supra.*) without examining difference between language in § 1346(b)(1) and § 2674; failing to recognize that a private person under § 2674 must be a natural person.).
[10] The United States also relies upon *Reilly v. United States*, 863 F.2d 149, 162 (1st Cir. 1988) and *Starns v. United States*, 923 F.2d 34, 37 (4th Cir. 1991) two cases where the provisions of state medical malpractice statutes reduced the Plaintiff's damages under the FTCA. But in both cases, the statutory defenses extended to both the government employees as well as the hypothetical private employer, so the plaintiffs' rights to compensation would have been the same had they had the option of litigating against the employees in state cour

Their federal grants are already set, and they do not cover their patients' malpractice claims. If this Court grants the government's motion, the effect on patients of federally qualified health centers will be devastating. For patients who have no personal assets, no insurance, or who are unemployed or underemployed, a malpractice settlement is likely the only way to pay for the future medical costs that medical malpractice almost inevitably causes. The people that Mattapan Community Health Center serves have fewer resources than other Massachusetts citizens to replace lost earnings or compensate for social costs resulting from medical negligence or the wrongful death of a loved one. This Court's extinction of physician liability will cause incalculable harm to the very people FSHCAA was supposed to benefit.

## CONCLUSION

Congress' waiver of sovereign immunity and its expansion of the FTCA compensation system to cover the conduct of medical personnel working at federally qualified health centers was not intended to reduce the compensation tort victims were eligible to receive under state law. Nor were these enactments supposed to give the government litigation advantages beyond those of their private counterparts. For these reasons, and the reasons set forth above, the United States' Motion for Partial Summary Judgment must be denied.

Respectfully submitted,
Plaintiffs,
By their attorneys,

/s/ Ian McCallister
Ian McCallister
Thomas & Wickenheiser LLC
1R Newbury Street, Suite 303B
Peabody, MA 01960
(774) 302-2300
ian@thomaswicklaw.com

Dated:  April 18, 2024

22

<u>**CERTIFICATE OF SERVICE**</u>

I, Ian McCallister, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


                                                    /s/ Ian McCallister
Dated: April 18, 2024                               Ian McCallister