UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SOANE MONESTIME and WOLD MONESTIME, Individually and as Parents and Next Friends of O.G.M., | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 1:21-cv-10403-IT |
| MEGAN S. CONNELLY, M.D., and UNITED STATES OF AMERICA, | * * * | |
| Defendants. | * | |

MEMORANDUM & ORDER

July 3, 2024

TALWANI, D.J.

Plaintiffs Soane Monestime and Wold Monestime, individually and as parents and next friends of minor child O.G.M., brought this action against Defendants Megan S. Connelly, M.D., and the United States of America arising out of care rendered to O.G.M. following her birth. Pending before the court is the United States' Motion for Partial Summary Judgment Pursuant to Mass. Gen. L. ch. 231, § 85K (the "Motion") [Doc. No. 79], seeking summary judgment that the United States is entitled to the Mass. Gen. L. ch. 231, § 85K statutory damages cap on all counts against it. For the reasons stated below, the motion is GRANTED as to those claims brought against the United States as a substitute for Mattapan Community Health Center (Counts V and VI) and DENIED as to those claims brought against the United States as a substitute for Nurse Practitioner Laverne Dickson (Counts III and IV).

## I.    Procedural Background

Plaintiffs filed this action in March 2021 for personal injuries resulting from the alleged negligence of two medical professionals, Dr. Connelly and Nurse Practitioner Dickson, in the

treatment of O.G.M. Compl. [Doc. No. 5]. The <u>Complaint</u> alleges one count of negligence causing permanent injuries and loss of chance of cure on behalf of O.G.M and one count of the loss of O.G.M.'s services, society, affection, and companionship against Dr. Connelly, who provided O.G.M. medical care and treatment at Brigham and Women's Hospital from approximately February 13, 2019, through February 15, 2019 (Counts I and II). The <u>Complaint</u> alleges these same counts against the United States as a substitute for Nurse Practitioner Dickson, who provided O.G.M. medical care starting on February 16, 2019, and thereafter (Counts III and IV), and as a substitute for Dickson's employer, Mattapan Community Health Center (Counts V and VI).

On October 17, 2023, the United States moved to amend its Answer to assert as an affirmative defense the statutory cap on damages pursuant to Mass. Gen. L. ch. 231, § 85K. [Doc. No. 50]. The court denied the motion as untimely. Order [Doc. No. 60].

The United States now seeks partial summary judgment on this same defense. Mot. [Doc. No. 79].[1]

---

[1] The United States now contends that its assertion of the statutory cap falls within its previously asserted Affirmative Defenses 8 and 14. Mem. ISO Mot. 2 [Doc. No. 80]. But Defense 8 asserts that "Plaintiffs' damages, if any, are limited to damages recoverable under 28 U.S.C. § 2674 and under Massachusetts law, and may not include punitive damages against Defendant United States." Ans. 8 [Doc. No. 18]. This defense—and its reference to 28 U.S.C § 2674 and Massachusetts law—pertains to the lack of punitive damages that may be held against the United States and is not relevant to the issue presented here.

Defense 14 asserts that "[t]o the extent that the substantive law of Massachusetts has limitations (statutory or common law) on Plaintiffs' cause of action or damages, Plaintiffs' claims are subject thereto." <u>Id.</u> at 9. This general affirmative defense also is not sufficient for pleading the statutory damages cap pursuant to M.G.L. ch. 231, § 85K because "[i]n order to enjoy the statutory cap, a hospital must prove both that it is a charitable organization, and that the tort complained of 'was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation.' If a hospital's objective in treating a patient, however, is merely to generate revenue, the hospital's activity must be analyzed as 'commercial'

II.     **Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers, Inc., 670 F.3d 119, 125 (1st Cir. 2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

III.    **Material Facts**

The government provides the following undisputed evidence that Mattapan Community Health Center is a charitable organization pursuant to M.G.L. ch. 231 § 85K. First, the Mattapan Community Health Center is organized as a Massachusetts charitable corporation and remains in good standing as such. See Commonwealth of Mass. Certificate of Good Standing and/or Tax

---

rather than 'charitable.'" Harlow v. Chin, 405 Mass. 697, 715, 545 N.E.2d 602 (1989) (internal citation omitted). "The requirement that [the statutory cap defense] be raised as an affirmative defense in such circumstances prevents unfair surprise, a key focus of the requirement of pleading affirmative defenses, and resulting prejudice to the plaintiff." Keene v. Brigham & Women's Hosp., Inc., 439 Mass. 223, 239, 786 N.E.2d 824 (2003). Where a defendant does not explicitly plead this defense in a timely manner, a plaintiff does not have a reason to conduct discovery into the charitable status of the defendant.

Arias Cocco v. United States, No. 21-10800-PBS (D. Mass. Mar. 21, 2023) [Doc. No. 49], on which the government relies, is not to the contrary. In Arias Cocco, the United States filed an Amended Answer [Doc. No. 25] (explicitly pleading the § 85K affirmative defense) before the deadline for amending pleadings stated in the Scheduling Order [Doc. No. 16] (adopting the Joint Statement in [Doc. No. 14]) and before completion of the discovery period. See Arias Cocco, No. 21-10800-PBS [Doc. No. 29].

However, because Plaintiffs concede that Mattapan Community Health Center is a charitable organization, Opp'n 9 [Doc. No. 82], and have addressed the government's argument on the merits, the court does so as well.

Compliance, Ex. A to Mem. ISO Mot. [Doc. No. 80-1]. The health center was formed as a charitable organization to "promote, provide and insure personal health care services . . . focusing on preventative and early diagnostic treatment to all segments of the community," and to provide health services for the community "irrespective of ability to pay." See Articles of Org. ¶ 2, Ex. B to Mem. ISO Mot. [Doc. No. 80-2]; Articles of Amendment, Ex. C to Mem. ISO Mot. [Doc. No. 80-3] (changing name of corporation to Mattapan Community Health Center, Inc.); Amended By-Laws of Mattapan Community Health Center ("By-Laws"), Ex. E to Mem. ISO Mot. [Doc. No. 80-5] ("The corporation is organized and shall at all times be operated exclusively for charitable purposes . . . ."). The health center is exempt from taxation as a charitable organization. See Internal Revenue Service correspondence (June 5, 1975), Ex. D to Mem. ISO Mot. [Doc. No. 80-4]; By-Laws Art. I, Section 3 [Doc. No. 80-5] ("It is intended that the corporation be an exempt organization under Section 501(c)(3) of the Internal Revenue Code of 1954, as amended.").

**IV.    Discussion**

At issue is whether the M.G.L. ch. 231, § 85K statutory cap on damages limiting the tort liability of charitable organizations in Massachusetts applies to the United States where the United States is substituted as a defendant for Nurse Dickson in Counts III and IV of the Complaint [Doc. No. 5], and for her employer, Mattapan Community Health Center, in Counts V and VI.

    A.  *Statutory Framework*

        1.  Federal Law

Plaintiffs' claims against the United States are brought under the Federal Tort Claims Act ("FTCA"). The FTCA establishes that

district courts . . . shall have exclusive jurisdiction of civil actions on claims
against the United States, for money damages . . . for injury or loss of property, or
personal injury or death caused by the negligent or wrongful act or omission of
any employee of the Government while acting within the scope of his office or
employment, under circumstances where the United States, if a private person,
would be liable to the claimant in accordance with the law of the place where the
act or omission occurred.

28 U.S.C. § 1346(b)(1).

The FTCA provides further that "[t]he United States shall be liable, respecting the

provisions of this title relating to tort claims, in the same manner and to the same extent as a

private individual under the like circumstances []." 28 U.S.C. § 2674. With respect to any such

claim, the United States is entitled to "assert any defense based upon judicial or legislative

immunity which otherwise would have been available to the employee of the United States

whose act or omission gave rise to the claim, as well as any other defenses to which the United

States is entitled." Id.; see also Day v. Massachusetts Air National Guard, 167 F.3d 678, 682 (1st

Cir. 1999) (explaining that the United States consents to be sued for damages under the FTCA

"provided that in the same circumstances a private employer would be liable for the acts of his

employee under the local law").

Under the Federal Employees Liability Reform and Tort Compensation Act of 1988 (also

known as the "Westfall Act"), FTCA liability provides the exclusive remedy available to those

injured by any federal employee "acting within the scope of his office or employment." 28

U.S.C. § 2679(b)(1).

"The law of the place provides the substantive rules to be used in deciding FTCA

actions." Bolduc v. United States, 402 F.3d 50, 56 (1st Cir. 2005); see also Reilly v. United

States, 863 F.2d 149, 161 (1st Cir. 1988) ("[D]amages in an FTCA suit . . . must be assessed in

conformity with state law.").

2.  State Law

The parties do not dispute that the allegedly tortious actions here occurred in Massachusetts, and that this court should apply Massachusetts law in deciding the immunities and defenses available to the United States.

Massachusetts General Laws ch. 231, § 85K, which the United States asks this court to apply to all claims against it in this action, provides a $100,000 cap for damages in medical malpractice claims against charitable organizations. To receive the benefit of this statutory cap, a hospital must prove both that it is a charitable organization and that the tort complained of "was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation." M.G.L. ch. 231, § 85K.

This statutory cap does not limit the individual liability of the charitable organizations' employees. See Mullins v. Pine Manor Coll., 389 Mass. 47, 63, 449 N.E.2d 331 (1983) (declining to immunize the vice-president of a college when the college's liability was capped under § 85K, noting "[t]he general rule . . . that an agent is not entitled to the protection of his principal's immunity even if the agent is acting on behalf of his principal.").

B.  *Application of § 85K Cap to the United States as Substituted for Mattapan Community Health Center (Counts V and VI)*

The United States admits that the Mattapan Community Health Center is deemed to be an employee of the United States. Ans. ¶ 4 [Doc. No. 18] (citing the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233(g)–(n)). Accordingly, the United States is responsible for the liability of the Mattapan Community Health Center.

Based on the undisputed material facts, the Mattapan Community Health Center is a charitable organization whose liability under Massachusetts law would be capped at $100,000. Therefore, the government's motion is GRANTED as it applies to Counts V and VI.

C.  *Application of § 85K Cap to the United States as Substituted for Nurse Dickson
(Counts III and IV)*

The government asserts that FTCA liability follows the doctrine of *respondeat superior*
and the United States should therefore also receive the benefit of the § 85K statutory cap for
those counts addressed specifically to Nurse Dickson. Mem. ISO Mot. 6-8 [Doc. No. 80].
Plaintiffs argue that this approach is incompatible with the text of the FTCA and that the § 85K
statutory cap should not apply where the United States has been substituted for Nurse Dickson.
Opp'n 9 [Doc. No. 82].

The question before this court requires interpreting the text of the FTCA. In determining
the meaning of a statute, courts "look first to its language, giving the words used their ordinary
meaning." Levin v. United States, 568 U.S. 503, 513 (2013) (quotation omitted). Several
provisions of the FTCA are considered here.

First, the jurisdictional provision, 28 U.S.C. § 1346(b)(1), refers to civil actions where
"the United States, if a private person, would be liable[.]" The term "private person" does not
differentiate between natural persons and legal entities, and districts courts therefore have
exclusive jurisdiction as to claims against the United States, whether the United States is
substituted for a natural person or a legal entity.

But "[t]he fact that Congress grants *jurisdiction* to hear a claim does not suffice to show
Congress has abrogated all *defenses* to that claim. The issues are wholly distinct." United States
v. Nordic Village, Inc., 503 U.S. 30, 38 (1991) (italics in original) (internal citation omitted).
Here, § 1346(b)(1) merely conveys exclusive jurisdiction to district courts "[s]ubject to" Chapter
171 of Title 28 (the substantive provisions of the FTCA). Once jurisdiction is established under
§ 1346, courts must look to those substantive provisions to define the scope of the United States'
liability. See United States v. Wong, 575 U.S. 402, 412 (2015) (emphasizing that reading the

language of § 1346(b)(1) into separate provisions would disregard "the structural divide built into the statute"). Relevant here is 28 U.S.C. § 2674, which provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a *private individual* under like circumstances." (italics added).

Contrary to the government's argument, the phrase "private individual under the like circumstances" in § 2674 does not refer to a "corporation." First, Congress did not use "employer" or "private person" in this provision but "private individual." The Supreme Court has not interpreted the word "individual" in the FTCA, but it has done so when interpreting other federal statutes. It has concluded that when Congress refers to the liability of "individuals," it "unambiguously" refers to the "liability [of] natural persons." Jesner v. Arab Bank, PLC, 584 U.S. 241, 266 (2018). In Mohamad v. Palestinian Authority, 566 U.S. 449 (2012), the Court found that, in "everyday parlance," the word "individual" typically refers "unmistakably to a natural person." Id. at 454. Further, in Mohamad, the Supreme Court examined its own usage of the word and explained that the Court "routinely uses 'individual' to denote a natural person, and in particular to distinguish between a natural person and a corporation." Id. Congress, the Mohamad Court concluded, "does not, in the ordinary course, employ the word any differently." Id. While noting that Congress may give the word "individual" a broader meaning, the Supreme Court cautioned that "before we will assume it has done so, there must be some indication Congress intended such a result" and that only a "rare statute" will include such an indication. Id. at 455.

There is no indication in the text of the FTCA to support a conclusion that Congress intended to give the words "private individual" in § 2674 a broader meaning than their common usage. In fact, Congress's use of the different phrase "private person" in § 1346(b)(1), the

8

jurisdictional provision of the FTCA, suggests the opposite. It is a maxim of statutory interpretation that "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." Sosa v. Alvarez-Machain, 542 U.S. 692, 711 n.9 (2004) (internal quotation marks and citation omitted). And it is true that "'[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the wor[d] 'person' . . . include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, *as well as* individuals." Mohamad, 566 U.S. at 454 (quoting 1 U.S.C. § 1 (emphasis added)). As in Mohamad, this court must assume that Congress's use of two different terms within the same statute was intentional. That assumption, in turn, buttresses the conclusion that, when the United States faces liability under the FTCA for claims against a natural person, the federal government steps entirely into that natural person's shoes.

The government relies heavily on Haceesa v. United States, 309 F.3d 722 (10th Cir. 2002), where the Tenth Circuit concluded when confronted with a similar question that "the only shoes that the Government stands in under the FTCA are those of private employers" and allowed the United States to avail itself of a New Mexico medical malpractice cap for "health care provider[s]" when it was substituted as a defendant for individual federal employees. Id. at 728. But the Tenth Circuit's analysis in Haceesa is not instructive for a number of reasons.

First, Haceesa was decided in 2002, before the Supreme Court's decision in United States v. Wong, 575 U.S. 402 (2015), which, as discussed above, holds that § 1346(b)(1) of the FTCA merely confers jurisdiction without describing the United States' liability under the statute. Without the benefit of Wong, the Tenth Circuit placed undue weight on the jurisdictional provision's "private person" language and inappropriately merged it with the "private

individual" language of § 2674 in determining that the FTCA was couched in the doctrine of *respondeat superior*. See Haceesa, 309 F.3d at 728 ("If 'private person,' § 1346(b), and 'private individual,' § 2674, includes employers, then the recovery cap applies here because the private employer analogous to a government hospital is a private hospital. Section 1346(b) unmistakably is couched in the language of an employer's *respondeat superior* liability.").

Second, the Haceesa decision was published before the Supreme Court's ruling in Mohamad. Therefore, when the Tenth Circuit decided in Haceesa whether the words "private individual" in § 2674 include corporate employers, it did not have the benefit of the Supreme Court's clarification that "individual" presumptively means "natural person." Mohamad, 566 U.S. at 454.

Third, in Haceesa, the Tenth Circuit buttressed its conclusion by asserting the "rule that any waiver of sovereign immunity 'must be construed strictly in favor of the sovereign and not enlarged beyond what its language requires.'" Haceesa, 309 F.3d at 728 (quoting United Tribe of Shawnee Indians v. United States, 253 F.3d 543, 547 (10th Cir. 2001) (quoting United States v. Nordic Village Inc., 503 U.S. 30 (1992))). However, United Tribe of Shawnee Indians did not deal with the FTCA, and the Supreme Court held in Nordic Village that in the context of the FTCA, it is the *exceptions* to the government's waiver of immunity that must be read narrowly because of "Congress' clear intent" embodied in the statute's "sweeping language." Nordic Village, 503 U.S. at 34.

In the FTCA context, the Supreme Court has reiterated this departure from strictly construing waivers of sovereign immunity multiple times. See, e.g., United States v. Yellow Cab Co., 340 U.S. 543, 547 (1951) ("The Federal Tort Claims Act waives the Government's immunity from suit in sweeping language. It unquestionably waives it in favor of an injured

person."); <u>Indian Towing Co. v. United States</u>, 350 U.S. 61, 69 (1955) (holding that when faced with FTCA cases, the court should not "as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it"); <u>Dolan v. U.S. Postal Service</u>, 546 U.S. 481, 492 (2006) (noting that the principle of strictly construing waivers of sovereign immunity "is 'unhelpful' in the FTCA context, where 'unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute'") (internal citations omitted); <u>Wong</u>, 575 U.S. at 419 ("the FTCA treats the United States more like a commoner than like the Crown . . . . [T]his Court has often rejected the Government's calls to cabin the FTCA on the ground that it waives sovereign immunity—and indeed, the Court did so in the years immediately after the Act's passage, even as it was construing other waivers of immunity narrowly."). Therefore, to the extent <u>Haceesa</u> relied upon the traditional principle of construing waivers of sovereign immunity narrowly in reaching its holding, it misinterpreted Supreme Court precedent and was incorrectly decided.

The Tenth Circuit in <u>Haceesa</u> also quotes <u>De Martinez v. Lamagno</u>, 515 U.S. 417 (1995), for its proposition that "[g]enerally, [FTCA] cases unfold much as cases do against other employers who concede *respondeat superior* liability." <u>Haceesa</u>, 309 F.3d at 729 (quoting <u>Lamagno</u>, 515 U.S. at 420). However, in this line from the introductory paragraph of the <u>Lamagno</u> opinion, the Supreme Court merely laid out *why* such suits proceeded against the United States rather than the individual employee. The next sentence clarified that the sole question before the <u>Lamagno</u> Court was whether the scope-of-employment certification that substituted the United States in as a defendant (and would have the action proceed against it as if a *respondeat superior* action) was reviewable. <u>See</u> <u>Lamagno</u>, 515 U.S. at 420. Again, the

<u>Lamagno</u> holding—concluding that the certification was reviewable, <u>id.</u> at 420—aligns with the Supreme Court's history of construing the FTCA in favor of injured plaintiffs.

The Tenth Circuit also justified its decision in <u>Haceesa</u> on its belief that Congress, in enacting the Westfall Act, signaled an intent to ground FTCA liability in the doctrine of *respondeat superior*. <u>Haceesa</u>, 309 F.3d at 728. The Tenth Circuit points to a Congressional statement that "'[t]he United States, through the Federal Tort Claims Act, is responsible to injured persons for the common law torts of its employees in the same manner in which the common law historically has recognized the responsibility of an employer for torts committed by its employees within the scope of their employment.'" <u>Id.</u> (quoting § 2(b), 102 Stat. 4564, 28 U.S.C. § 2671 note). In the Tenth Circuit's view, this provision dictates that FTCA liability places the federal government in an employer's shoes even when an individual employee was sued for tortious conduct. <u>Haceesa</u>, 309 F.3d at 728. However, this singular sentence from Congress's notes to the Westfall Act does not sufficiently characterize Congress's intent behind the passage of the 1988 Act. Instead, it is helpful to proceed with a brief summary of the Westfall Act's legislative history.

Congress passed the Westfall Act in response to the Supreme Court's decision in <u>Westfall v. Erwin</u>, 484 U.S. 292 (1988), where the Court "added an additional requirement for immunity when a Federal employee is sued in his personal capacity." H.R. Rep. No. 100-700, at 2 (1988). Under <u>Westfall</u>, "the Federal employee not only must have been acting within the scope of employment (the original standard), but also must have exercised governmental discretion in acting." <u>Id.</u>

The Westfall Act removed this new "governmental discretion" component of FTCA liability to accomplish its dual purposes of "protect[ing] Federal employees from personal

liability for common law torts committed within the scope of their employment, while providing

persons injured by the common law torts of Federal employees with an appropriate remedy

against the United States." Pub. L. 100-694, November 18, 1988, 102 Stat. 4563, § 2(b). The

H.R. Report accompanying the Westfall Act clarified Congress's intent to maintain the FTCA's

rigorous protections of those injured by federal employees:

> From the perspective of a person injured by the official conduct of a Federal
> employee, the ability to sue the United States under the FTCA generally has
> distinct advantages over a suit against the individual Federal employee. . . .
> [P]erhaps most important the United States Government will be able to pay any
> judgment that is awarded, while an individual Federal employee may be
> 'judgment-proof.'

H.R. Rep. No. 100-700, at 4. Congress's broader purpose in enacting the Westfall Act suggests

that Congress was concerned with reassuring injured parties that the United States would remain

open to suit for the torts of its employees. H.R. Rep. No. 100-700, at 4. In other words, the

Westfall Act is concerned with the question of *who* is liable to injured plaintiffs, not *to what*

*extent* they are so liable.

    The Tenth Circuit's interpretation that this Congressional statement instructs courts to

grant the federal government any defenses available to an alleged tortfeasor's employer directly

subverts Congress's recognition of the "distinct advantages" a plaintiff receives when suing the

United States rather than a federal employee, including that "the United States Government will

be able to pay any judgment that is awarded." Id. In the instant case, strictly construing FTCA

liability under the doctrine of *respondeat superior* would leave Plaintiffs in a far worse position

than they would be in if they were able to sue Nurse Dickson directly in state court. Such a

holding does not accurately reflect Congress's intent regarding either the FTCA or the Westfall

Act.

For the reasons stated above, this court is not persuaded by cases relied upon by the government that conduct the FTCA analysis similarly to the Tenth Circuit's approach in Haceesa, see, e.g., Lomando v. United States, 667 F.3d 363, 371–75 (3d Cir. 2011), or that rely upon Haceesa to reach the same conclusion, see, e.g., Est. of Boone v. United States, 591 F. Supp. 2d 800 (D. Md. 2008); Purbaugh by Purbaugh v. United States, 2007 WL 9813294 (W.D. Pa. Sept. 14, 2007); Meador et al. v. United States, 2023 WL 4236036 (D. Mass. June 28, 2023); Arias Cocco v. United States et al., No. 21-10800-PBS (D. Mass. Mar. 21, 2023) [Doc. No. 49].

The Eighth Circuit's reasoning in Knowles v. United States, 91 F.3d 1147, 1150 (8th Cir. 1996), where the court did not allow the United States to avail itself of South Dakota's medical malpractice cap on counts where it was substituted for individual defendants, is more persuasive. The South Dakota cap, like M.G.L. ch. 231, § 85K, limits the liability of hospitals, but would not have benefited the allegedly negligent physicians. The Eighth Circuit addressed the interaction between the Westfall Act and 28 U.S.C. § 2674, finding:

> [The United States] has, through the FTCA and the Westfall . . . Act, removed liability from its employees and placed it on itself. It is liable to the same extent the employee would have been absent immunity from suit. If an employee would not have had the benefit of a particular defense, a damages cap for example, neither does the United States.

Like the Eighth Circuit in Knowles, this court finds the language of the FTCA and the Westfall Act clear in providing that the United States is liable in the same manner as its allegedly negligent employees.

Under the FTCA, the United States has both the benefits and the exposure of being liable "in the same manner and to the same extent as" its employees. 28 U.S.C. § 2674. When state medical malpractice caps extend their protections to individual doctors, the United States regularly receives the benefit of those caps in FTCA actions. See, e.g., Reilly v. United States,

863 F.2d 149, 162 (1st Cir. 1988) (interpreting a Rhode Island statute[2]); Starns v. United States, 923 F.2d 34, 37 (4th Cir. 1991). But in Massachusetts, where § 85K's charitable immunity statutory cap on damages does not extend to a charitable organization's employees, see Mullins, 389 Mass. at 63, the United States is not entitled to a cap on claims where it has been substituted for those employees.

For these reasons, the government's Motion for Partial Summary Judgment is DENIED as to Counts III and IV.

**V.    Conclusion**

For the foregoing reasons, the government's Motion for Partial Summary Judgment Pursuant to Mass. Gen. L. ch. 231, § 85K [Doc. No. 79] is GRANTED in part and DENIED in part. The United States is entitled to the M.G.L. ch. 231, § 85K statutory cap on damages for Counts V and VI where the United States has been sued as a substitute for the Mattapan Community Health Center but is not entitled to the cap for Counts III or IV where the United States has been sued as a substitute for Nurse Practitioner Dickson.

IT IS SO ORDERED.

July 3, 2024                                /s/ Indira Talwani
                                            United States District Judge

---

[2] See R.I. Gen. Laws. § 9–19–34 ("[I]n an action for personal injury against a *licensed physician*, hospital, clinic, health maintenance organization or professional service corporation . . ." (emphasis added)). In other words, in Reilly, the federal government was eligible for the state statute's protections whether it was stepping into the shoes of the "licensed physician" or the "hospital."